**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COLLEEN FAULKNER; and QUINN TEW,
individually and on behalf of all others similarly
situated,

                         Plaintiffs,

      v.

EQUINOX HOLDINGS, INC.

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No.: 22-CV-00242

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs COLLEEN FAULKNER ("Faulkner") and QUINN TEW ("Tew") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys VALLI KANE & VAGNINI LLP, bring this action for damages and other legal and equitable relief against Defendant EQUINOX HOLDINGS, INC. ("Defendant") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the New York State Human Rights Law ("NYSHRL"); the New York City Human Rights Law ("NYCHRL"); and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.     This is a putative class action brought by Plaintiffs challenging acts committed by Defendant against Plaintiffs and those similarly situated, which amount to violations of federal, state, and local anti-discrimination laws.

2.     Defendant owns and operates luxury fitness centers located across the State of New York and the United States.

3.     Defendant employed Plaintiffs and the putative class members as Personal Trainers who provided physical training sessions and other services to Defendant's members. Defendant

employed the Personal Trainers in various tiers titled: "Tier 1," "Tier 2," "Tier 3," "Tier 3+," and "Tier X" (collectively, "Trainers"). Trainers received compensation based on, among other things, the number of personal training sessions they performed per bi-weekly pay period.

4.      Plaintiff Faulkner alleges that: Defendant discriminated against her on the basis of her gender by not recommending that Defendant's members use her as a Personal Trainer on the basis of her gender; and (ii) Defendant terminated her in retaliation for complaining about gender discrimination. Plaintiff Faulkner also alleges that she is entitled to recover (i) back pay; (ii) front pay; (iii) emotional damages; (iv) punitive damages; (v) interest; (vi) attorneys' fees and costs; and (vii) such other and further relief as this Court finds necessary and proper for Defendant's violations of Title VII, the NYSHRL, and the NYCHRL.

5.      Plaintiff Tew alleges that Defendant discriminated against her on the basis of her pregnancy by refusing to provide her with a pregnancy accommodation. Plaintiff Tew also alleges that she is entitled to recover (i) back pay; (ii) front pay; (iii) emotional damages; (iv) punitive damages; (v) interest; (vi) attorneys' fees and costs; and (vii) such other and further relief as this Court finds necessary and proper for Defendant's violations of Title VII, the NYSHRL, and the NYCHRL.

6.      Plaintiffs both further allege, on behalf of themselves and all other Tier 1 through Tier X female Trainers, that Defendant implemented a discriminatory policy whereby its members were permitted to select their Trainer on the basis of their gender. Notably, male Trainers were selected at a higher rate than female Trainers, which resulted in a loss of income for the female Trainers.

7.      Thus, Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and a class of persons who are female and are/were employed by Defendant as Tier 1,

Tier 2, Tier 3, Tier 3+, and/or Tier X Trainers within New York State during the past three (3) years through the final date of the disposition of this action and a subclass of persons who are female and are/were employed by Defendant as Tier 1, Tier 2, Tier 3, Tier 3+, and/or Tier X Trainers within New York City during the past three (3) years through the final date of the disposition of this action who were subject to Defendant's policy of allowing its members to select their Trainer on the basis of their gender which violates the NYSHRL and the NYCHRL and are entitled to recover: (i) back pay; (ii) emotional damages; (iii) punitive damages; (iv) interest; (v) attorneys' fees and costs; and (vi) such other and further relief as this Court finds necessary and proper.

8.      Plaintiffs Tew also brings this action pursuant to Fed. R. Civ. P. 23, on behalf of herself and a class of persons who are female and are/were employed by Defendant as Tier 1, Tier 2, Tier 3, Tier 3+, and/or Tier X Trainers nationwide during the past three hundred (300) days through the final date of the disposition of this action who were subject to Defendant's policy of allowing its members to select their Trainer on the basis of their gender which violates Title VII and are entitled to recover: (i) back pay; (ii) emotional damages; (iii) punitive damages; (iv) interest; (v) attorneys' fees and costs; and (vi) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C.

§ 2201; (iii) under 29 U.S.C. §§ 2601 *et seq.*; and (iv) 42 U.S.C. §§ 2000e *et seq.*

10.     Jurisdiction is also proper under 28 U.S.C. § 1332(d) as each of the Fed. R. Civ. P. 23 classes alleged herein is comprised of over one hundred (100) members and have damages in excess of $5,000,000.00, exclusive of interest and costs. There is also one class member from each class who is a citizen of and resides in a state other than New York or Delaware.

11.     Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains facilities, conducts business, and resides in this district.

12.     The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## THE PARTIES

13.     At all relevant times, Plaintiff Faulkner was an "employee" within the meaning of Title VII, the NYSHRL, and the NYCHRL and currently resides in New York, New York.

14.     At all relevant times, Plaintiff Tew was an "employee" within the meaning of Title VII, the NYSHRL, and the NYCHRL and currently resides in Jersey City, New Jersey.

15.     Upon information and belief, Defendant is a privately owned corporation organized under the laws of the State of Delaware and has its corporate headquarters located at 895 Broadway, Manhattan, New York 10003.

16.     Defendant transacted and continues to transact business in New York and within New York County by employing Plaintiffs and all those similarly situated as Trainers.

4

17.     Defendant has at all relevant times been an "employer" covered by Title VII, the NYSHRL, and the NYCHRL.

18.     Upon information and belief, throughout the relevant time period, Defendant employed at least five hundred (500) employees.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

19.     Plaintiff Faulkner who has herein alleged claims pursuant to Title VII has timely filed a complaint of discrimination and retaliation with the EEOC.

20.     Plaintiff Tew who has herein alleged claims pursuant to Title VII and has timely filed a complaint of discrimination with the EEOC.

21.     Plaintiffs have received their Notice of Right to Sue letters from the EEOC for the Title VII claims alleged herein and have timely filed this Complaint.

## STATEMENT OF FACTS

**I.      Facts Pertaining to Defendant's Unlawful Gender Preference Policy.**

22.     Defendant employed Plaintiffs and all those similarly situated as Trainers throughout New York and the United States.

23.     One of the Trainers' primary job duties was to perform personal training sessions for Defendant's members.

24.     All or some of the Trainers' pay (depending on the Tier level) was comprised of payment for performing personal training sessions. Specifically, Trainers were paid a flat rate for each personal training session they performed. Thus, the more personal training sessions a Trainer had per pay period, the higher their pay was.

25.     Throughout the relevant time period, Defendant implemented a policy whereby its members were permitted to select their Trainer based upon their gender. In fact, Defendant

specifically asked its members what gender Trainer they preferred.

26.    Male Trainers were selected at a higher rate by Defendant's members than female Trainers resulting in less pay for female Trainers.

27.    Defendant's members are/were clothed during personal training sessions. The Trainers did not touch the Defendant's members' genitalia during personal training sessions.

28.    Trainers do not view Defendant's members nude.

29.    Defendant's Trainer gender preference policy was implemented throughout the United States, including throughout New York and New York City.

30.    Defendant's Trainer gender preference policy is both discriminatory on its face and resulted in a loss of income for female Trainers in violation of Title VII, the NYSHRL, and the NYCHRL.

## II.    Facts Pertaining to Plaintiff Faulkner's Individual Claims

31.    In 2010, Plaintiff Faulkner began her employment for Defendant as a Trainer at its Printing House, 421 Hudson Street, New York, New York 10014 location.

32.    When a new Personal Training Manager ("PTM") is hired, the standard practice is for them to train with all of their Trainers so that they can make Trainer recommendations to Defendant's members. If a new PTM does not train with a Trainer, they are unlikely to refer them clients as they do not know their strengths, weaknesses, and training style.

33.    In and around October 2019, Plaintiff Faulkner was assigned Jersey Samuel ("Ms. Samuel") as her new PTM.

34.    Upon her becoming Plaintiff Faulkner's PTM, Ms. Samuel exclusively trained with the male Personal Trainers such as Anthony Paul ("Mr. Paul"), Rafael Cornelious ("Mr. Cornelious"), and, upon information and belief, Sean Trainer ("Mr. Trainer"). Ms. Samuel did not

train with Plaintiff Faulkner nor any other female Trainer. Thus, Ms. Samuel effectively could not refer members to them to personally train. In fact, Ms. Samuel never trained with Plaintiff Faulkner.

35.     Mr. Paul, Mr. Cornelius, and Mr. Trainer were all less tenured and experienced than Plaintiff Faulkner.

36.     Ms. Samuel's failure to train with Plaintiff Faulkner and refer members to her on the basis of her gender resulted in a loss of income for Plaintiff Faulkner as she was paid a flat rate for each personal training session that she performed.

37.     On October 21, 2019, Plaintiff Faulkner opposed Ms. Samuel's discriminatory conduct by complaining to her that she was only training with male Personal Trainers.

38.     On December 11, 2019, Plaintiff Faulkner asked Ms. Samuel for additional clients in a meeting that included Connor Tansey ("Mr. Tansey"), a Fitness Manager. Ms. Samuel, however, denied her request. Ms. Samuel also canceled Plaintiff Faulkner's professional development meeting[1] without reason.

39.     Also at the December 11, 2019 meeting, Plaintiff Faulkner again complained that Ms. Samuel was only training with male Personal Trainers to which Ms. Samuel replied, "Some members request men." Plaintiff Faulkner additionally complained that Ms. Samuel promoted Mr. Trainer, who was employed by Defendant for less than a year, to an Instructional Role over more qualified female Personal Trainers, including Plaintiff Faulkner.

40.     Upon information and belief, Instructional Role Trainers received compensation benefits such as additional referrals or extra pay.

---

[1] Professional development meetings were mainly to assist Personal Trainers in advancing their careers. At the meetings, Personal Trainers were able to discuss their progress with their Manager(s) and how to improve their performance and acquire new clients.

41.     On December 11, 2019 (after the meeting), Ms. Samuel refused to provide Plaintiff Faulkner with a gift on her nine (9) year anniversary or permit her to give a short speech. Such are two (2) customs that regularly occur during an employee's anniversary. A few hours later, Ms. Samuel requested via email a "complimentary" (*i.e.*, free) training session for the week of January 5, 2020, with Plaintiff Faulkner despite it being Defendant's standard practice that Managers compensate Trainers for personal training sessions.

42.     On December 12, 2019, Plaintiff Faulkner complained to Terry Jetter ("Mr. Jetter"), the General Manager, of how humiliating her anniversary was and informed him how Ms. Samuel was treating her differently. Mr. Jetter's sole reply was "point noted."

43.     A few days thereafter, Ms. Samuel began "staring down" Ms. Faulkner during her personal training sessions to the extent that her clients were uncomfortable.

44.     On January 4, 2020, less than a month after her engagement in a protected activity, Ms. Faulkner was terminated by Mr. Jetter in retaliation for engaging in protected activities.

III.    **Facts Pertaining to Plaintiff Tew's Individual Claims**

45.     In or around March 2011, Plaintiff Tew began her employment for Defendant as a Personal Trainer.

46.     In or around December 2017, she began working at Defendant's 54 Murray Street, New York, New York location.

47.     Plaintiff Tew was employed by Defendant as a Tier X Trainer. As a Tier X Trainer, Plaintiff Tew almost exclusively performed personal training sessions.

48.     In March 2020, Defendant "closed its doors" due to the COVID-19 pandemic. However, Plaintiff Tew, like other Personal Trainers, continued training their clients (Defendant's members) virtually.

49.    From March 2020 to August 2020, Plaintiff Tew trained her clients virtually.

50.    In August 2020, Plaintiff Tew received a telephone call from her Manager Ken Lee ("Mr. Lee") who informed her that Defendant was planning on reopening. Mr. Lee then asked Ms. Tew if she was comfortable returning to the gym to train her clients in person. Plaintiff Tew responded that she could not return to work in person as she suffered from a repressed immune system and because the COVID-19 virus could severely impact her health and her pregnancy. Plaintiff Tew also requested that she be permitted to continue performing virtual training sessions as she had done for the past five (5) months. She further informed Mr. Lee that a majority of her clients no longer resided in New York City and, thus, would have to be trained virtually.  Mr. Lee then stated that he needed to speak with "upper management," but he did not "foresee" Ms. Tew's request "being a problem."

51.    Approximately one (1) or (2) weeks later, Mr. Lee contacted Plaintiff Tew to inform her that he spoke with "upper management." He then informed Plaintiff Tew that she could not continue training virtually and had two options: (i) end her employment with Defendant; or (ii) take an unpaid leave of absence. Notably, either of these choices resulted in a loss of pay and employment for Plaintiff Tew. When Plaintiff Tew rejected the unpaid leave of absence, she was instantly terminated in violation of Title VII, the NYSHRL, and the NYCHRL.

52.    Notably, other non-pregnant Personal Trainers were permitted to continue virtually training their clients after August 2020 such as Deborah Christ, Jameela Aghilli, and Claudia Ramirez.

53.    Accordingly, Plaintiff Tew requested a reasonable pregnancy/disability accommodation to continue performing her personal training virtually and was denied and/or was terminated on the basis of her pregnancy/disability.

## <u>FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS</u>

**I.    The New York State ("NYS") Class**

54.    Plaintiffs seek to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous three (3) years, were subjected to violations of the NYSHRL.

55.    The NYS Class which Plaintiffs seek to define includes:

> All female Tier 1, Tier 2, Tier 3, Tier 3+, and Tier X Personal Trainers employed by Defendant within New York State during the past three (3) years through the final date of disposition of this action, who are or were subject to Defendant's policy of allowing its members to select their Personal Trainer on the basis of gender.

56.    The number of class members protected by the NYSHRL who have suffered under Defendant's violations of the NYSHRL as set forth herein, are in excess of forty (40) and thus are too numerous to join in a single action, necessitating class recognition.

57.    All questions relating to the NYS Class's allegations under the NYSHRL share a common factual basis with those raised by the claims of Plaintiffs. No claims asserted herein under the NYSHRL are specific to Plaintiffs or any proposed NYS Class member and the claims of Plaintiffs are typical of those asserted by the proposed NYS Class.

58.    Plaintiffs will fairly and adequately represent the interests of all members of the proposed NYS Class.

59.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the NYS Class's allegations that Defendant violated the NYSHRL.

60.    The class members of the proposed NYS Class are readily discernable and

ascertainable. Contact information for all members of the proposed NYS Class[2] is readily available from Defendant since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

61.     Plaintiffs assert these claims on their own behalf as well as on behalf of the NYS Plaintiffs through their attorneys who are experienced in class action litigation as well as employment litigation.

62.     Plaintiffs are able to fairly represent and properly protect the interests of the absent members of the proposed NYS Class and have no interests conflicting with those of the NYS Class.

63.     The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual NYS Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

64.     Because of the nature of employment discrimination claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiffs' willingness to proceed against Defendant. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the NYS Plaintiffs' jobs and continued employment.

65.     The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of

---

[2] Hereinafter referred to as the "NYS Plaintiffs".

the proposed NYS Class, continued violations of the NYSHRL will undoubtedly continue.

66.    Whether Plaintiffs and the NYS Plaintiffs were subject to an unlawful policy of Defendant whereby it allows its members to select Personal Trainers on the basis of their gender is a common question that can readily be resolved through the class action process.

**II.    The New York City ("NYC") Subclass**

67.    Plaintiffs seek to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous three (3) years, were subjected to violations of the NYCHRL and are also part of the NYS Class.

68.    The NYC Subclass which Plaintiffs seek to define includes:

> All female Tier 1, Tier 2, Tier 3, Tier 3+, and Tier X Personal Trainers employed by Defendant within New York City during the past three (3) years through the final date of disposition of this action, who are or were subject to Defendant's policy of allowing its members to select their Trainer on the basis of gender.

69.    The number of class members protected by the NYCHRL who have suffered under Defendant's violations of the NYCHRL as set forth herein, are in excess of forty (40) and thus are too numerous to join in a single action, necessitating class recognition.

70.    All questions relating to the NYC Subclass's allegations under the NYCHRL share a common factual basis with those raised by the claims of Plaintiffs. No claims asserted herein under the NYCHRL are specific to Plaintiffs or any proposed NYC Subclass member and the claims of Plaintiffs are typical of those asserted by the proposed NYC Subclass.

71.    Plaintiffs will fairly and adequately represent the interests of all members of the proposed NYC Subclass.

72.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the NYC Subclass's allegations that Defendant violated the

NYCHRL.

73.     The class members of the proposed NYC Subclass are readily discernable and ascertainable. Contact information for all members of the proposed NYC Subclass[3] is readily available from Defendant since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

74.     Plaintiffs assert these claims on their own behalf as well as on behalf of the NYC Plaintiffs through their attorneys who are experienced in class action litigation as well as employment litigation.

75.     Plaintiffs are able to fairly represent and properly protect the interests of the absent members of the proposed NYC Subclass and have no interests conflicting with those of the NYC Subclass.

76.     The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual NYC Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

77.     Because of the nature of employment discrimination claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiffs' willingness to proceed against Defendant. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the NYC Plaintiffs' jobs and continued employment.

---

[3] Hereinafter referred to as the "NYC Plaintiffs".

78.     The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed NYC Subclass, continued violations of the NYCHRL will undoubtedly continue.

79.     Whether Plaintiffs and the NYC Plaintiffs were subject to an unlawful policy of Defendant whereby it allows its members to select Personal Trainers on the basis of their gender is a common question that can readily be resolved through the class action process.

III.    **The Nationwide Class**

80.     Plaintiff Tew seeks to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous three (300) days, were subjected to violations of the Title VII.

81.     The Nationwide Class which Plaintiffs Tew seeks to define includes:

> All female Tier 1, Tier 2, Tier 3, Tier 3+, and Tier X Personal Trainers employed by Defendant nationwide during the past three (300) hundred days through the final date of disposition of this action, who are or were subject to Defendant's policy of allowing its members to select their Personal Trainer on the basis of gender.

82.     The number of class members protected by Title VII who have suffered under Defendant's violations of Title VII as set forth herein, are in excess of forty (40) and thus are too numerous to join in a single action, necessitating class recognition.

83.     All questions relating to the Nationwide Class's allegations under Title VII share a common factual basis with those raised by the claims of Plaintiff Tew. No claims asserted herein under Title VII are specific to Plaintiff Tew or any proposed Nationwide Class member and the claims of Plaintiff Tew are typical of those asserted by the proposed Nationwide Class.

84.     Plaintiff Tew will fairly and adequately represent the interests of all members of the proposed Nationwide Class.

85.     A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Nationwide Class's allegations that Defendant violated Title VII.

86.     The class members of the proposed Nationwide Class are readily discernable and ascertainable. Contact information for all members of the proposed Nationwide Class[4] is readily available from Defendant since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

87.     Plaintiff Tew asserts these claims on her own behalf as well as on behalf of the Nationwide Plaintiffs through her attorneys who are experienced in class action litigation as well as employment litigation.

88.     Plaintiff Tew is able to fairly represent and properly protect the interests of the absent members of the proposed Nationwide Class and have no interests conflicting with those of the Nationwide Class.

89.     The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual Nationwide Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

90.     Because of the nature of employment discrimination claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff Tew's willingness to proceed against Defendant. The anonymity

---

[4] Hereinafter referred to as the "Nationwide Plaintiffs".

inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the Nationwide Plaintiffs' jobs and continued employment.

91.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed Nationwide Class, continued violations of Title VII will undoubtedly continue.

92.    Whether Plaintiff Tew and the Nationwide Plaintiffs were subject to an unlawful policy of Defendant whereby it allows its members to select Personal Trainers on the basis of their gender is a common question that can readily be resolved through the class action process.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The New York State Human Rights Law, Made by Plaintiffs on Behalf of all NYS Plaintiffs (Gender Discrimination)**

93.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

94.    Plaintiffs and all NYS Plaintiffs are female employees of Defendant making them members of a protected class.

95.    Defendant implemented a policy whereby it permitted its members to select Trainers on the basis of their gender.

96.    As a result of Defendant's customer gender preference policy, Plaintiffs and the NYS Plaintiffs were not assigned personal training clients on the basis of their gender, which negatively affected their pay.

97.    Defendant's customer gender preference policy was implemented throughout New York State

98.    Defendant's customer gender preference policy that Plaintiffs and the NYS

Plaintiffs are or were subjected to violates the New York State Human Rights Law.

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**The New York City Human Rights Law, Made by Plaintiffs on Behalf of all NYC Plaintiffs**
**(Gender Discrimination)**

99.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

100.    Plaintiffs and all NYC Plaintiffs are female employees of Defendant making them members of a protected class.

101.    Defendant implemented a policy whereby it permitted its members to select Trainers on the basis of their gender.

102.    As a result of Defendant's customer gender preference policy, Plaintiffs and the NYC Plaintiffs were not assigned personal training clients on the basis of their gender, which negatively affected their pay.

103.    Defendant's customer gender preference policy was implemented throughout New York City.

104.    Defendant's customer gender preference policy that Plaintiffs and the NYC Plaintiffs are or were subjected to violates the New York City Human Rights Law.

**AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-3, Made by Plaintiff Tew on**
**Behalf of all Nationwide Plaintiffs**
**(Gender Discrimination)**

105.    Plaintiff Tew repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

106.    Plaintiff Tew and all Nationwide Plaintiffs are female employees of Defendant making them members of a protected class.

107.    Defendant implemented a policy whereby it permitted its members to select

Trainers on the basis of their gender.

108.    As a result of Defendant's customer gender preference policy, Plaintiff Tew and the Nationwide Plaintiffs were not assigned personal training clients on the basis of their gender, which negatively affected their pay.

109.    Defendant's customer gender preference policy was implemented throughout the United States.

110.    Defendant's customer gender preference policy that Plaintiff TewF and the Nationwide Plaintiffs are or were subjected to violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-3, Made by Plaintiff Faulkner (Gender Discrimination)**

111.    Plaintiff Faulkner repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

112.    Plaintiff Faulkner, a female, is a member of a protected class.

113.    Plaintiff Faulkner was an employee of Defendant and qualified for her position.

114.    Plaintiff Faulkner was subjected to disparate treatment by not receiving a training session with her Manager on the basis of her gender resulting in a loss of personal training clients.

115.    Plaintiff Faulkner's loss of personal training clients negatively affected her pay.

116.    Defendant's conduct was willful and in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3 *et seq.*

### AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York State Human Rights Law, Made by Plaintiff Faulkner (Gender Discrimination)**

117.    Plaintiff Faulkner repeats and re-alleges the allegations contained in the paragraphs

above as if fully set forth herein.

118.    Plaintiff Faulkner, a female, is a member of a protected class.

119.    Plaintiff Faulkner was an employee of Defendant and qualified for her position.

120.    Plaintiff Faulkner was subjected to disparate treatment by not receiving a training session with her Manager on the basis of her gender resulting in a loss of personal training clients.

121.    Plaintiff Faulkner's loss of personal training clients negatively affected her pay.

122.    Defendant's conduct was willful and in violation of the New York State Human Rights Law.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York City Human Rights Law, Made by Plaintiff Faulkner**
**(Gender Discrimination)**

123.    Plaintiff Faulkner repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

124.    Plaintiff Faulkner, a female, is a member of a protected class.

125.    Plaintiff Faulkner was an employee of Defendant and qualified for her position.

126.    Plaintiff Faulkner was subjected to disparate treatment by not receiving a training session with her Manager on the basis of her gender resulting in a loss of personal training clients.

127.    Plaintiff Faulkner's loss of personal training clients negatively affected her pay.

128.    Defendant's conduct was willful and in violation of the New York City Human Rights Law.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964 42 U.S.C. §§ 2000e-3 *et seq.*, Made by Plaintiff**
**Faulkner**
**(Retaliation)**

129.    Plaintiff Faulkner repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

130.    Plaintiff Faulkner engaged in protected activity by complaining of gender discrimination to Defendant.

131.    Defendant retaliated against Plaintiff Faulkner by taking adverse employment actions against her, including terminating her, for engaging in a protected activity.

132.    Defendant's conduct was in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3 *et seq.*

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
### The New York State Human Rights Law, Made by Plaintiff Faulkner
### (Retaliation)

133.    Plaintiff Faulkner repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

134.    Plaintiff Faulkner engaged in protected activity by complaining of gender discrimination to Defendant.

135.    Defendant retaliated against Plaintiff Faulkner by taking adverse employment actions against her, including terminating her, for engaging in a protected activity.

136.    Defendant's conduct was in violation of the New York State Human Rights Law.

## AS AND FOR A NINTH CAUSE OF ACTION FOR A VIOLATION OF
### The New York City Human Rights Law, Made by Plaintiff Faulkner
### (Retaliation)

137.    Plaintiff Faulkner repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

138.    Plaintiff Faulkner engaged in protected activity by complaining of gender discrimination to Defendant.

139.    Defendant retaliated against Plaintiff Faulkner by taking adverse employment actions against her, including terminating her, for engaging in a protected activity.

140.    Defendant's conduct was in violation of the New York City Human Rights Law.

**AS AND FOR A TENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964 42 U.S.C. §§ 2000e-3 *et seq.*, Made by Plaintiff Tew**
**(Pregnancy Discrimination)**

141.    Plaintiff Tew repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

142.    Plaintiff Tew, a pregnant female, is a member of a protected class.

143.    Plaintiff Tew was an employee of Defendant and qualified for her position.

144.    Plaintiff Tew requested a reasonable accommodation for her pregnancy.

145.    Plaintiff Tew was denied a reasonable accommodation for her pregnancy resulting in her termination and/or was terminated on the basis of her pregnancy.

146.    Defendant's conduct was willful and in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3 *et seq.*

**AS AND FOR AN ELEVENTH FOURTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York State Human Rights Law, Made by Plaintiff Tew**
**(Pregnancy Discrimination)**

147.    Plaintiff Tew repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

148.    Plaintiff Tew, a pregnant female who had a repressed immune system, is a member of a protected class.

149.    Plaintiff Tew requested a reasonable accommodation for her pregnancy.

150.    Plaintiff Tew was denied a reasonable accommodation for her pregnancy and/or disability resulting in her termination and/or was terminated on the basis of her pregnancy and/or disability.

151.    Defendant's conduct was willful and in violation of the New York State Human

Rights Law.

### AS AND FOR A TWELFTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York City Human Rights Law, Made by Plaintiff Tew**
**(Pregnancy and Disability Discrimination)**

152.    Plaintiff Tew repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

153.    Plaintiff Tew was a female and pregnant employee of Defendant and qualified for her position.

154.    Plaintiff Tew, a pregnant female who had a repressed immune system, is a member of a protected class.

155.    Plaintiff Tew had a disability as defined by the NYCHRL.

156.    Plaintiff Tew requested a reasonable accommodation for her pregnancy.

157.    Plaintiff Tew was denied a reasonable accommodation for her pregnancy and/or disability resulting in her termination and/or was terminated on the basis of her pregnancy and/or disability.

158.    Defendant's conduct was willful and in violation of the New York City Human Rights Law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and all Class Plaintiffs demand judgment against Defendant as follows:

A.    Designation of Plaintiffs as representatives of the Fed. R. Civ. P. 23 NYS Class and NYC Subclass defined herein, and Plaintiffs' counsel as Class Counsel;

B.    Designation of Plaintiff Tew as representative of the Fed. R. Civ. P. 23 Nationwide Class defined herein, and Plaintiffs' counsel as Class Counsel;

C.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the

purposes of the claims brought on behalf of all proposed NYS, NYC, and Nationwide Class members under the NYSHRL, the NYCHRL, and Title VII;

D.      Demand a jury trial on these issues to determine liability and damages;

E.      Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

F.      A judgment declaring that the practices complained of herein are unlawful and in violation of the New York State Human Rights Law, the New York City Human Rights Law; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*;

G.      All damages which Plaintiffs and all Class Plaintiffs have sustained as a result of Defendant's conduct, including: (i) back pay; (ii) emotional damages; (iii) front pay; (iv) punitive damages; and (v) general and special damages for lost compensation and job benefits they would have received but for Defendant's improper practices;

H.      An award to Plaintiffs and all Class Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action;

I.      Pre-judgment and post-judgment interest, as provided by law;

J.      An award to Plaintiffs and all Class Plaintiffs representing Defendant's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

K.      Awarding Plaintiffs and all Class Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs; and

L.      Granting Plaintiffs and all Class Plaintiffs other and further relief as this Court finds

necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this complaint.

Dated:       January 11, 2022
               Garden City, New York

Respectfully submitted,

*/s/ James A. Vagnini*
James A. Vagnini
Alexander M. White
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248

*Attorneys for Plaintiffs*